**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC,<br>　　　　　　　　Plaintiff,<br>　　　　　v.<br>SLING TV L.L.C., et al.,<br>　　　　　　　　Defendants. | Case No. 1:17-cv-02097-RBJ<br><br>PATENT CASE<br>JURY TRIAL DEMANDED |

**REALTIME'S MOTION TO EXCLUDE DISH'S DAMAGES OPINIONS
BASED ON NON-COMPARABLE RPX OPTION AMOUNTS**

## I.　INTRODUCTION

Plaintiff Realtime Adaptive Streaming LLC ("Realtime") moves to exclude opinions by Defendants' damages expert Paul Meyer that are based on a broad compact between Realtime and the patent aggregator RPX Corporation ("RPX"). Mr. Meyer contends that two subparts of the overall compact ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ would be relevant to a hypothetical negotiation between Realtime and the Defendants in this case. But Mr. Meyer fails to account for critical factors rendering these provisions *not* economically comparable to the hypothetical negotiation, including large payments and multiple settlements that are part of the overall deal. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Under controlling Federal Circuit law, Mr. Meyer's opinions are unreliable and should be excluded.

## II.　RELEVANT FACTS

***Mr. Meyer's opinion relies on two option provisions in an agreement with RPX that settled around 20 active lawsuits***

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

RPX offers a "subscription based" "risk management" service in which RPX acquires rights to a number of patents and then, subscribers (i.e., RPX members) pay RPX an annual fee in exchange for licenses to these patents. Ex. C, Ex. 5 to April 23, 2021 Deposition of Paul Meyer, RPX Corp. 2017 10-K, at 1.

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████



### III.   LEGAL STANDARD

***Under Federal Circuit law, licenses upon which an expert relies must be economically comparable to the hypothetical negotiation.***

The Federal Circuit requires that "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc U.S.A. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ("[U]se of past patent licenses under factors 1 and 2 must account for differences in the … economic circumstances of the contracting parties."). It is Mr. Meyer's (and Defendants') burden to establish the economic comparability of the agreements on which he relies as factor 1 or 2 licenses. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009). Moreover, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability . . . does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

It is improper to "rely on license agreements that were radically different from the hypothetical agreement under consideration to determine a reasonable royalty." *Uniloc*, 632 F.3d at 1317. The Federal Circuit has warned against relying on licenses that are significantly different in kind or scope from that at issue in the hypothetical royalty negotiation between the parties in the case, or that arise from circumstances different that the hypothetical negotiation. *Lucent Tech. v. Gateway, Inc.,* 580 F.3d 1301, 1329 n.7 (Fed. Cir. 2009); *In re Innovatio IP Ventures, LLC Patent Litigation,* 2013 WL 5593609 at *35–36 (N.D. Ill. Oct. 3, 2013). For example, a license "directed to a large collaboration far more complicated than the patent" is not comparable to one involving only "the patent covering the infringing . . . tool at issue." *Lucent*, 580 F.3d at 1329, n.7.

The Federal Circuit has also identified settlements as of particular concern in establishing economic comparability, as the royalty in settlements often reflect in part or in whole the avoidance of litigation expense and risk by the licensee. *Prism Technologies LLC, v. Sprint Spectrum L.P.,* 849 F.3d 1360, 1369 (Fed. Cir. 2017) ("A settlement tends to undervalue the technology where it reflects a discount for the probability of losing. A patent owner may also accept too little, relative to the patent's value, when it accepts an amount out of a desire to avoid further expenditure of (presumptively unrecoverable) litigation costs."). *See Spectralytics, Inc. v. Cordis Corp.,* 649 F.3d 1336, 1347 (Fed. Cir. 2011) (earlier settlement "reflected a very deep discount" as plaintiff "hoped that the patent would survive any challenge to its validity, but . . . did not really know for certain, and it could not really know for certain without paying millions of dollars in legal fees to launch lengthy and risky litigation.")

IV.     **ARGUMENT**

> ***The RPX Agreement on which Mr. Meyer relies is not economically comparable to the hypothetical negotiation, and Mr. Meyer's analysis of the RPX agreement is unreliable and violates controlling law***

Under Federal Circuit law, the hypothetical negotiation for a reasonable royalty contemplates a negotiation between Realtime and Defendants for a license to just the patent-in-suit, where both parties agree at the outset of the negotiation that the patent is valid and infringed. To establish economic comparability of the RPX agreement, Mr. Meyer must compare the circumstances of the RPX agreement to that of the hypothetical negotiation. *Uniloc*, 632 F.3d at 1317.

Unlike this hypothetical negotiation, the RPX Agreement is a portfolio license granting RPX sublicense rights for RPX members, thereby settling numerous lawsuits.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

A.      **Mr. Meyer fails to account for the fact that RPX negotiated the RPX Agreement with motivations vastly different from an accused infringer in a hypothetical negotiation.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████ RPX's business is obtaining patent rights for its

subscriber members and to attract new members. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

Mr. Meyer failed to account for these fundamental differences. ██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

         ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

**B.**      **Mr. Meyer fails to account for the fact that Realtime negotiated the RPX Agreement with motivations vastly different from a licensor in a hypothetical negotiation.**

Mr. Meyer also completely fails to account for Realtime's motivations in negotiating a broad compact with RPX, which were much different from Realtime's motivations in licensing a single accused infringer to the patent-in-suit. Not only are RPX's economic motivations entirely different from what Defendants' motivations would be at the

hypothetical negotiation, but also Realtime's economic motivations in entering into RPX Agreement are entirely different from what Realtime's motivations would be at the hypothetical negotiation ████████████████████████████████████████████████

██████████████████████████████

    ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

    ██████████████████████████████████████████████

████████████████████████████████████████████ The Federal Circuit has cautioned that settlements may be potentially flawed evidence of economic comparability, as the royalty in settlements reflects the avoidance of litigation expense and risk and may therefore undervalue the patented technology. *Prism*, 849 F.3d at 1368–71; *Spectralytics*, 649 F.3d at 1347. Accordingly, it is vital to account for these differences where possible, and to refrain from relying on settlements where doing so is not possible.

████████████████████████████████████████████████████





## V.    CONCLUSION

Mr. Meyer relies on only two specific provisions in the RPX Agreement but fails to account for multiple factors rendering those provisions not economically comparable to the hypothetical negotiation between Realtime and the Defendants. These opinions are unreliable and Realtime respectfully requests them to be excluded.

Respectfully submitted,

*/s/ Philip X. Wang*
Marc A. Fenster (CA SBN 181067)
Reza Mirzaie (CA SBN 246953)
C. Jay Chung (CA SBN 252794)
Philip X. Wang (CA SBN 262239)
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474

Dated: May 28, 2021

Eric B. Fenster (CO Atty Reg # 33264)
**ERIC B. FENSTER, LLC**
1522 Blake Street, Suite 200
Denver, CO 80202
(303) 921-3530
Eric@fensterlaw.net

***Attorneys for Plaintiff***
***Realtime Adaptive Streaming LLC***

**CERTIFICATION OF COMPLIANCE**

1.     The subject motion/brief complies with the page limitation of Judge R. Brooke Jackson's Practice Standards.

2.     The subject motion/brief complies with the type-volume limitation of D.C.COLO.LPtR 17. This brief contains 3,032 words.

3.     The subject motion/brief complies with the typeface requirements of D.C.COLO.LPtR 17. The brief was prepared in double spaced typeface using 12 point Arial font.

*/s/ Philip X. Wang*
Philip X. Wang

**CERTIFICATE OF SERVICE**

I hereby certify that this document was electronically filed using the CM/ECF system on May 28, 2021, which will notify and serve all counsel of record.

*/s/ Philip X. Wang*
Philip X. Wang

**CERTIFICATE OF CONFERENCE**

Following written correspondence regarding this issue, the parties' met and conferred on May 28, 2021. Discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Philip X. Wang*
Philip X. Wang