**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC,<br>Plaintiff,<br>v.<br>SLING TV L.L.C., et al.,<br>Defendants. | Civil Action No. 1:17-cv-02097-RBJ<br><br>PATENT CASE<br>JURY TRIAL DEMANDED |

**REALTIME'S REPLY IN SUPPORT OF MOTION TO EXCLUDE DISH'S DAMAGES OPINIONS BASED ON NON-COMPARABLE RPX OPTION AMOUNTS**

As DISH agrees, the Federal Circuit has held that "damages experts must account for the *totality of the circumstances*" when they analyze "relevant settlement agreements." Opp'n at 9 (emphasis added). Here, Mr. Meyer did not come close to accounting for the "totality of the circumstances"—or even most circumstances. He failed to assess the economic comparability of the RPX option amounts in at least three critical ways. First, he failed to consider RPX's role as the negotiator of the RPX option amounts. Second, Mr. Meyer failed to account for Realtime receiving a ▮▮▮▮▮▮ and savings from resolving dozens of litigations as a predicate condition of the RPX option amounts. *See* Dkt. No. 230. Third, he ignored the costs to ▮▮▮▮▮▮ for exercising the RPX options, ▮▮▮▮▮▮

Contrary to DISH's argument, these flaws with Mr. Meyer's opinions go and admissibility, not weight. His opinions are unreliable and should be excluded.

**Alleged Prejudice:** DISH argues it is "immaterial" that Mr. Meyer failed to assess these differences. Opp'n at 3–7 ("immaterial that RPX, rather than ▮▮▮▮▮▮, negotiated the agreements"), 7–9 (immaterial that Realtime received ▮▮▮▮▮▮ as part of the RPX option amounts). DISH defends Mr. Meyer's choice to ignore these differences, claiming it would be "unduly prejudicial" to exclude the RPX option amounts

1

because they are lower than Realtime's damages claim in this case. Opp'n at 5, 9. But these arguments are not probative of whether Mr. Meyer adequately assessed the economic comparability of the RPX options. He did not. In effect, DISH is arguing that the RPX option amounts should be admissible, not because Mr. Meyer addressed their comparability, but because they are lower dollar figures that would serve as a "check" on Realtime's damages opinions. That is not the standard for admissibility. *Faulkner v. Arista Records LLC,* 2014 WL 4547824 at *19 (S.D.N.Y. Sept. 15, 2014) ("the standard for a rebuttal expert witness is the same as for any expert witness").

Indeed, there is no unfair prejudice to DISH in excluding unreliable opinions about non-comparable option amounts. To the contrary, allowing these opinions without proper analysis and as an artificial "check" would be unfairly prejudicial to Realtime.

**Technical Comparability:** DISH defends Mr. Meyer's choice to ignore differences by contending that it is an "unusual proposition" that "agreements that cover the same asserted patent are not comparable." Opp'n at 1. But the technical comparability of one overlapping is not enough. And damages experts must "account for differences in the . . . economic circumstances of the *contracting parties.*" *Finjan,* 626 F.3d at 1211. Here, those differences are enormous. Mr. Meyer was required to consider the economic circumstances of RPX, the contracting party, as well as Realtime (including the ▮ ▮) and explain why the RPX option amounts are comparable despite these differences in the hypothetical negotiation. He makes no attempt to do so.

**Realtime's Economic Incentive:** Mr. Meyer's comparability analysis ignores the ▮ payment made in exchange for Realtime's agreement to the RPX option amounts. Mot. Ex. A at ¶¶ 61–71, 83–85. DISH argues this incentive is irrelevant. Opp'n,

2

7-9. DISH also argues that, because Realtime was not "compelled" to agree to those amounts, Mr. Meyer appropriately ignored the ▇▇▇▇ payment. *Id.* 3–7. This fails. Under *Finjan*, Mr. Meyer was required to consider the economic circumstances that led to Realtime's agreement to the RPX option amounts, including the ▇▇▇▇ payment. Mr. Meyer's failure renders his opinions unreliable.

Mr. Meyer's only mention of Realtime's economic incentives is his assertion that the RPX option amounts reflect what Realtime would be willing to accept in a license with ▇▇▇▇▇▇. Mtn. Ex. A at ¶7 7. But this ignores the "economic circumstances of the contracting parties," including that Realtime would never agree to the RPX option amounts in isolation without the ▇▇▇▇▇▇. On this point, Mr. Meyer (and DISH) misrepresent Realtime's witness, Mr. Padian's testimony. Mr. Padian clearly testified that the option amounts only represented a reasonable royalty including the "totality of the circumstances"—which includes the ▇▇▇▇▇▇▇▇ and savings from resolving dozens of litigations. *Id.,* at n. 129. Mr. Padian's testimony thus illustrates that Mr. Meyer's opinion is not based on the "totality of the circumstances," and is instead based on the facts as Mr. Meyer wishes them to be. Mr. Meyer treats the ▇▇▇▇ payment as though it came from an entirely separate agreement relating to the initial RPX sublicensees that had nothing to do with the RPX options for ▇▇▇▇▇▇, even though the RPX Options were part of the same overall deal. *Id.* ¶¶ 53-56, 61-71, 83-85, 92-93. Likewise, when discussing the ▇▇▇▇▇▇ options, he refused to acknowledge (let alone analyze) the indisputable fact that this ▇▇▇▇ payment represented the primary economic incentive for Realtime to agree to the RPX option amounts. *Id.* This failure renders his methodology unsound under *Finjan*.

3

**RPX's Role as Licensee:** Mr. Meyer's comparability analysis also fails to address that RPX was the negotiator or consider how RPX's motivations would differ from DISH's motivations at the hypothetical negotiation. *Id.* at ¶¶ 61-71, 83-85. By ignoring RPX's role, Mr. Meyer again fails to account for differences in the "economic circumstances of the *contracting parties.*" *Finjan,* 626 F.3d at 1211. DISH's opposition fails to reference a single sentence in Mr. Meyer's report where he adjusts for the role of RPX, the contracting party, in his assessment of the RPX options. Opp'n at 4, citing Mtn. Ex. A at ¶¶ 61–69, 83–84. While *DISH* now argues that "[i]t is immaterial that RPX, rather than ▮▮▮▮▮▮▮▮, negotiated the agreements" (Opp'n at 3), this sentence does not appear in Mr. Meyer's report. But Mr. Meyer did not analyze RPX's role, let alone conclude it is "immaterial."

DISH argues the Realtime's relationship with RPX is "essentially the same" as with ▮▮▮▮▮▮▮▮ DISH. Opp'n at 6. But DISH's attorney arguments cannot fill in the gaps in Mr. Meyer's opinion. Mr. Meyer did not perform an analysis of the evidence and conclude that RPX's relationship with Realtime is "essentially the same" as a practicing entity that infringes its patents. Rather, he ignores RPX's role.

DISH contends that RPX "would be" motivated similarly to ▮▮▮▮▮▮▮▮, or DISH based on the theory that any licensee would be motivated to pay as little as possible. Opp'n at 6. But this theory is divorced from the facts of this case. An expert cannot simply assume what RPX's motivations "would be" without analyzing any evidence. This assumption also contrary to evidence. RPX's business model is to attract new members and add value for current members. Thus, RPX's motivation in negotiating a price for the options must be considered in the context of the overall deal, including RPX's payment to Realtime to encourage Realtime to agree to lower option amounts.

4

Finally, DISH contends that Mr. Meyer's comparability analysis was sufficient because he compared ▇▇▇▇▇▇▇ to DISH. Opp'n at 3–6. But DISH cannot deny that ▇▇▇▇▇▇▇ not only never signed the option amounts, but also that these companies did not even negotiate them. In fact, there is no evidence these companies were even aware of them. *Georgia-Pacific* Factor 1 is about "what a willing licensor and a *willing licensee*" would agree to. Mr. Meyer therefore was required account for the fact that the "willing licensee" here was not ▇▇▇▇▇▇▇, but RPX. He did not.

This highlights another fatal flaw Mr. Meyer's opinions and the unfair prejudice to Realtime to allowing them. DISH argues that ▇▇▇▇▇▇▇ considered the option amounts "too high" ▇▇▇▇▇▇▇▇▇▇▇▇▇. This is a misleading distortion. As Mr. Meyer admitted, he has how idea what RPX charges ▇▇▇▇▇▇▇, and those amounts ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

| Respectfully submitted, | Dated: July 2, 2021 |
|---|---|
| */s/ James N. Pickens*<br>Marc A. Fenster (CA SBN 181067)<br>Reza Mirzaie (CA SBN 246953)<br>C. Jay Chung (CA SBN 252794)<br>Philip X. Wang (CA SBN 262239)<br>James N. Pickens (CA SBN 307474)<br>**RUSS AUGUST & KABAT**<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, CA 90025; (310) 826-7474 | Eric B. Fenster (CO Atty Reg # 33264)<br>**ERIC B. FENSTER, LLC**<br>1522 Blake Street, Suite 200<br>Denver, CO 80202<br>(303) 921-3530<br>Eric@fensterlaw.net<br><br>***Attorneys for Plaintiff***<br>***Realtime Adaptive Streaming LLC*** |

**CERTIFICATE OF COMPLIANCE:** This brief complies with the limits of Judge Jackson's Practice Standards, and the type-volume limits of D.C.COLO.LPtR 17, with 1,16 words.

**CERTIFICATE OF SERVICE:** I certify that this document was electronically filed using the CM/ECF system on July 2, 2021, which will notify and serve all counsel of record.

*/s/ James N. Pickens*