IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02097-RBJ

REALTIME ADAPTIVE STREAMING LLC,

     Plaintiff,

v.

SLING TV L.L.C.,
SLING MEDIA, L.L.C.,
ECHOSTAR TECHNOLOGIES L.L.C.,
DISH NETWORK L.L.C

     Defendants.

---

## ORDER re ATTORNEY'S FEES

---

The Court granted summary judgment dismissing plaintiff's remaining claims on July 31, 2021, concluding that the subject patent was invalid because it claimed an abstract idea ineligible for patenting.  ECF Nos. 305 (order) and 306 (final judgment).  Defendants then moved for an award of attorney's fees.  Plaintiff objects.  The Court finds that this was an "exceptional case" warranting an award of attorney's fees but will need additional information and likely a hearing to determine the reasonable amount of fees to be awarded.

### BACKGROUND

Briefly, by the time summary judgment was granted, the remaining claim was Realtime Adaptive Streaming LLC's claim that defendants had infringed Claim 1 (and possibly other claims) of U.S. Patent No. 8,867,610 ("the '610 patent").  Entitled "System and Methods for Video and Audio Data Distribution," the '610 patent concerns data compression and decompression algorithms.  It purports to optimize compression time for digital files to prevent

1

problems such as download delay, data buffering, and reduced system speeds. First it assigns a data profile based on the frequency that the data is accessed or written. Then it assigns a compression algorithm to each profile, depending upon whether the read to write ratio is balanced (symmetrical) or unbalanced (asymmetrical).

The Patent Act does not permit patenting of "laws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLSBank Int'l,* 573 U.S. 208, 216 (2014). In addressing defendants' argument that the '610 patent claimed an ineligible abstract idea, I followed a two-step process: first, was the claim directed to an abstract idea; and second, did the claim nevertheless contain an "inventive concept" sufficient to transform the abstract idea into a patent-eligible application. *See Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 566 U.S. 66, 77-79 (2012).

At the first step I found that the patent was indeed directed to an ineligible abstract concept, and that Realtime's reliance on this Court's definition of the claim term "throughput of a communication channel" to distinguish law on which defendants relied was unpersuasive because that term itself embodied an abstract idea. *Id.* at 10-11. At the second step I found that there was no "inventive concept" that rescued the claim, notably because it provided no details as to how the invention would work to solve the problems the patent claimed to solve, such as an unconventional encoding or decoding structure or other compression, transmission, or storage techniques. *Id.* at 14.

The merits of those findings and conclusions are currently on appeal to the Federal Circuit. However, the attorney's fee issue remains before me, and I regret that I have been unable to turn to it until now.

**STANDARD OF REVIEW**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "An exceptional case 'is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *University of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.,* 851 F.3d 1317, 1322 (Fed. Cir. 2017.  There is no precise formula for making that determination. *Biax Corp. v. Nvidia Corp.,* 626 F. App'x 968, 970-71 (Fed. Cir. Feb. 24, 2015) (unpublished).

## ANALYSIS AND CONCLUSIONS

### A.  <u>Defendants' Entitlement to a Fee Award</u>.

I find that this case was "exceptional" because Realtime disregarded repeated indicators that the '610 patent was likely invalid and pressed on at great expense to the defendants (and itself).  A chronology of key events serves to explain this finding.

This case was filed on August 31, 2017.  Initially Realtime claimed that defendants (collectively "Dish") had infringed three patents: U.S. Patent Nos. 8,275.897 ("the '897 patent"); 8,867,610 ("the '610 patent"); and 8,934,535 ("the '535 patent").  This was not Realtime's first venture into infringement litigation.  In its motion for attorney's fees Dish characterizes Realtime as a "serial litigant," having filed some 145 cases, and Dish claims that Realtime was created by a patent attorney for the purpose of licensing and monetizing patents.  ECF No. 308 at 10-11.  That description does not bear on the merits of a particular case.  If Dish infringed a valid patent it deserves a defeat in court, no matter what Dish speculates about Realtime's underlying business plan.  However, Realtime's litigation experience does suggest that it should be particularly alert to the risks of pursuing a potentially invalid claim too long.

Shortly after the case was filed Dish (and then co-defendant Arris Group, Inc.) filed motions to dismiss and for judgment on the pleadings.  ECF Nos. 47 and 48.  The motions were based on defendants' contention that the patents were invalid because they were directed to an abstract idea.  *See* ECF No. 47, *passim;* ECF No. 48 at 1.  The Court denied those motions during the course of a Scheduling Conference on March 7, 2018, finding that it would proceed to claim construction first.  ECF No. 80 (transcript) at 14.  But the Court also expressed its concern about validity:

> [I]f all you're talking about is algorithms and applying some formula, my intuition, my gut instinct would be, well, maybe the defendants have a point. Maybe this is just an abstract concept.  This doesn't sound like something you would patent.  It doesn't sound like it's technology.  It just sounds like an idea.

*Id.* at 9.

Later in 2018, two courts found that Claim 15 of Realtime's similar '535 patent was invalid as directed to an abstract idea without an "inventive concept" that revived its patentability.  Those rulings were highly significant to this Court's ultimate determination that the '610 patent suffered the same fate.  The two patents have nearly the same title.[1]  More importantly, the specifications for the two patents are virtually identical.  ECF No. 305 at 2, 6. Most importantly, Claim 1 of the '610 patent and Claim 15 of the '535 patent are so similar as to be essentially the same in substance.  *See id.* at 6-7 (chart comparing the components of the two claims).  Thus, the reasoning in the two cases, *Realtime Adaptive Streaming LLC v. Google LLC,* No. CV 18-3629-GW(JCx) (C.D. Cal. Oct. 25, 2018) (slip op. filed at ECF No. 234-6) and *Realtime Adaptive Streaming, LLC v. Netflix, Inc.,* No 17-1692-CFC-SRF, 2018 WL 6521978

---

[1] The '610 patent is titled "System and Methods for Video and Audio Data Distribution."  The '535 patent is titled "System and Methods for Video and Audio Data Storage and Distribution."

(D. Del. Dec. 12, 2018), featured prominently in my order granting summary judgment in this case.  ECF No. 305 at 7-9.

In my view, the two cases should have featured prominently in Realtime's thinking about the present case.  However, Realtime attempted to distinguish *Google,* largely based on Claim 1's term "throughput of a communication channel," which is not found in the '535 patent, and on my interpretation of the term in the Claim Construction Order.[2]  The only reference to the term in the '610 Specification states: "In one embodiment, a controller marks and monitors the throughput (data storage and retrieval) of a data compression system and generates control signals to enable/disable different compression algorithms when, e.g., a bottleneck occurs as to increase the throughput and eliminate the bottleneck."  ECF No. 2-2 at 9:53-58.  The problem is, absent any indication of how the system tracks the number of pending requests to determine the throughput of the communication channel, i.e., a mechanism for determining the number of requests, the term is itself an abstract idea.  *See* ECF No. 305 at 11.

Realtime attempted to discredit the *Netflix* case as wrongly decided, in part because it found Claim 15 of the '535 claim to be a representative claim.  But the California court also implicitly found Claim 15 to be representative of at least Claims 16-30.  More importantly, representative or not, Claim 15 is so similar to Claim 1 of the '610 patent that the two courts' rulings should have served as a red flag that Claim 1 faced serious trouble.

This case was stayed on February 26, 2019, pending an *Inter Partes* Review ("IRP") of the '610 patent's validity by the Patent Trial and Appeal Board.  *See* ECF Nos. 157 and 161.  While the stay was in effect certain events bearing somewhat on this case took place.

---

[2] In the Claim Construction Order, issued on January 11, 2019, I defined "throughput of a communication channel" to mean the "number of pending transmission requests over a communication channel."  *See* ECF No. 151 at 8-10.

First, two administrative patent judges found claims 1-14 of the '535 patent (the claims not addressed in the California court's invalidity order) unpatentable on obviousness grounds. *See Netflix, Inc. v. Realtime Adaptive Streaming, LLC,* 2020 WL 120083, at *14 (P.T.A.B. Jan. 10, 2020); *Google LLC v. Realtime Adaptive Streaming, LLC,* 2020 WL 959190, at *16 (P.T.A.B. Feb. 27, 2020).

Second, the Federal Circuit issued an unpublished decision in *Adaptive Streaming Inc. v. Netflix, Inc.,* 836 F. App'x 900 (Dec. 14, 2020).  The case involved a patent that claimed systems for communicating audio and video signals between devices that use different formats.  The court affirmed the dismissal of plaintiff's case, finding that the claims at issue failed the first *Alice* step because they "were directed to the abstract idea of 'collecting information and transcoding it into multiple formats.'"  *Id.* at 903.  At the second step, the court determined that the claims "do not incorporate anything that would transform their subject matter into an eligible application of the abstract idea. . . .In particular, there is no identification in the claims or written description of specific, unconventional encoding, decoding, compression, or broadcasting techniques."  *Id.* at 904.  An unpublished opinion does not create a binding precedent, but it was another red flag for the present case.  The case was later highlighted in defendants' notice of intent to file a motion for summary judgment based on invalidity.  *See* ECF No. 204 at 2.

The IRP was terminated on jurisdictional grounds (untimeliness) on January 31, 2020, and rehearing was denied on February 4, 2020.  *See* ECF No. 172.  Appeals were filed, and the Court elected to continue the stay in effect until the conclusion of the IPR proceedings.  *See* ECF No 173.  In a joint status report filed on January 14, 2021, the parties informed the Court that no IRPs were still pending.  ECF No. 178 at 2.  Accordingly, the Court lifted the stay on January 15,

2021.  *See* ECF No. 179 (minute order).  That marks the date when defendants began to incur the attorney's fees that they are seeking in this case.  *See* ECF No. 308-2 at 1.

On February 11, 2021, in a letter to Realtime's counsel, defendants reiterated their position on invalidity, noted that substantial litigation expense would be incurred if the case continued, and asked plaintiff to dismiss its claims.  ECF No. 308-5.  Realtime chose not to do so.

On February 4, 2021 and June 9, 2021 a PTO examiner conducting an *ex parte* reexamination of the '610 patent issued first and second non-final office actions rejecting Claim 1 and several other claims as unpatentable on obviousness grounds.  *See* ECF No. 305 at 4, n.1.  I did not consider those non-final office actions in my decision on the motion for summary judgment.  *Id.*  However, they could have served as additional red flags regarding the viability of Realtime's case.

Finally, on May 28, 2021, as an exhibit to a motion for summary judgment, defendants filed a declaration of Dr. Alan C. Bovik.  ECF No. 223-1.  A modified version of the declaration was filed on June 2, 2021 as an exhibit to defendant's Motion for Summary Judgment of Invalidity Based on Lack of Subject Matter Eligibility – the motion that I ultimately granted.  ECF No. 234-1.  Realtime promptly filed a Rule 702 motion to exclude certain of his opinions.  ECF No. 237.  I understand that parties to litigation typically are not persuaded by the opinions of the opposing party's retained expert.  In my view, however, Dr. Bovik's opinions merited serious consideration, at least as another red flag concerning the potential resolution of the invalidity issue.  I gave them weight in my summary judgment order.  ECF No. 305 at 13-14.

The parties completed briefing on summary judgment and, meanwhile, they were preparing for trial.  To be clear, I am not critical of Realtime or counsel for believing it their case

and wanting the opportunity to present it to a jury.  Rather, my point is that by carrying on despite numerous danger signals or red flags as I have called them, Realtime accepted the risk of having to reimburse defendants' reasonable attorney's fees.  In sum, when I consider the totality of the circumstances leading up to this Court's grant of summary judgment on July 31, 2021, I find that Realtime's dogged pursuit of the case notwithstanding those danger signals renders this an exceptional case.  I conclude that defendants are entitled to an award of reasonable attorney's fees.

B. **Amount of Fees**.

Defendants seek an award of $5,075,519, claiming that those are the attorney's fees it reasonably incurred in the six and one-half months after the stay was lifted.  Included in that amount are fees attributed to extensive discovery by both sides; multiple letters of intent to file and then the filing and briefing of multiple summary judgment motions; the filing and briefing of Rule 702 motions; motions in limine; and trial preparation.  Defendants ask the Court to evaluate these fees in the context of Realtime's seeking damages in the range of $42 million.

In support, defendants file the declaration of one of its lawyers, Adam Shartzer, describing the members of the Fish & Richardson PC team that worked on this case: 13 lawyers (six at the partner level); three litigation paralegals; four discovery analysts; four library and search analysts; an IP operations specialist; and a graphic artist.  ECF No. 308-1.  Their rates ranged upward to $900 per hour; overall, these individuals had an average billing rate of approximately $668 per hour.  That includes a 15.5% discount that Dish uniquely receives.  *Id.* at 11-12.  In addition, the Denver law firm Wheeler Trigg O'Donnell LLP was retained in April 2021 to assist in trial preparation.  According to the affidavit of Hugh Gottschalk, their fees totaled $103,986.50, representing the work of one partner, one associate and one paralegal, at

rates between $685 and $220 per hour, with an overall average billing rate of approximately
$637 per hour.

The backgrounds of the several lawyers are impressive.  But given the number of lawyers
and others working on the case, it is inevitable that there are duplications and other inefficiencies
in the numbers.  There is no indication that the time entries have been reviewed and culled to
eliminate inefficiency and assure that the time was necessarily and productively recorded.

In determining the reasonableness of attorney's fees, the Court starts with the "lodestar"
(reasonable hours times reasonable rates), which is presumptively reasonable.  *See Robinson v.
City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).  However, the lodestar can and
frequently is adjusted after applying factors such as those articulated in *Johnson v. Georgia
Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974].[3]  The Colorado Rules of Professional
Conduct provide a similar list of relevant factors.[4]  Defendants have not yet explained or
defended their figures in that context.

In its response Realtime asserts that $5 million is unreasonable on its face.  ECF No. 319
at 14.  However, plaintiff declines to dig into the "84 pages of raw billing entries" to highlight
those it believes to be unreasonable, and it suggests that the Court should not have to do that

---

[3] *Johnson* lists 12 factors for courts to consider in determining reasonableness: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717-19.

[4] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, COLORADO COURT RULES – STATE (2018).  These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6) nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

either.  *Id.*  Realtime requests the opportunity for further briefing without indicating what briefing it desires or how that would advance the ball.

The parties are entitled to a hearing on the reasonableness of the amount.  Prior to the hearing, however, I request that a responsible partner/principal carefully review the defense teams' time entries and cull all time that he or she finds to be duplicative, inefficient, or otherwise unreasonable in view of the *Johnson* factors.  The remaining time entries should then be carefully reviewed by a responsible member of the plaintiff's legal team to identify time that plaintiff still regards as unreasonable or not satisfactorily explained.  Counsel should then confer and attempt to reach agreement.  If agreement is not reached, then set an evidentiary hearing.  In that event, if plaintiff is willing to divulge information about the time spent by members of the plaintiff's team and their corresponding rates, the Court would consider that information in the reasonableness determination.  However, the Court is not requiring that plaintiff provide that information.

## ORDER

Defendants' motion for attorney's fees, ECF No. 308, is granted as to their entitlement to an award of reasonable attorney's fees.  The Court makes no ruling on the amount of such fees and has provided directions to counsel concerning that issue.

DATED this 20th day of January, 2022.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge