IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-02097-RBJ

REALTIME ADAPTIVE STREAMING LLC,

      Plaintiff,

v.

SLING TV L.L.C.,
SLING MEDIA, L.L.C.,
ECHOSTAR TECHNOLOGIES L.L.C.,
DISH NETWORK L.L.C

      Defendants.

---

## ORDER AWARDING ATTORNEY'S FEES

---

The Court previously granted summary judgment in favor of the defendants and found that this is an "exceptional case" for purposes of an attorney's fee award.  The amount of the attorney's fee claimed by defendants was disputed.  Having considered the parties' briefs and the evidence and arguments presented during the hearing, the Court awards attorney's fees to defendants Sling TV L.L.C., Sling Media, L.L.C., Echostar Technologies, L.L.C., and Dish Network, L.L.C. (collectively the "Dish defendants") and against plaintiff Realtime Adaptive Streaming, L.L.C. in the amount of $3,911,002.79.

## BACKGROUND

This patent infringement case was filed on August 31, 2017.  ECF No. 2.  On February 26, 2019, the Court granted the then-parties' joint motion for a stay until resolution of certain related matters pending before the Patent Trial and Appeal Board.  ECF No. 162.  The case was

administratively closed at that time.  ECF No. 163.  The stay was lifted, and the case was

reopened, on January 15, 2021.  ECF No. 179.

On May 26, 2021, the Dish defendants filed a motion for summary judgment based on

their contention that the subject patent was invalid.  ECF No. 216.  Two days later the Dish

defendants filed four additional motions for summary judgment based on other theories.  *See*

ECF Nos. 218, 221, 223 and 227.  The Court rejected what appeared to be an effort to

circumvent its page limitations by filing five separate motions for summary judgment; denied all

the motions for that reason; and recommended that the Dish defendants pick whatever it

considered to be its best issue and move on that basis.  ECF No. 232.

On June 2, 2021, the Dish Defendants filed a motion for summary judgment of invalidity

based on lack of subject matter jurisdiction.  ECF No. 234.  Briefing on this motion was

completed upon the filing of the Dish defendants' reply brief on July 2, 2021.  ECF No. 280.

The Court granted the motion and dismissed the case with prejudice in an order issued on July

21, 2021.  ECF No. 305.  On August 13, 2021, the Dish defendants moved to dismiss their

counterclaims in view of the Court's granting of their motion for summary judgment.  ECF No.

307.  That motion was granted, and an amended final judgment was entered on January 20, 2022.

ECF Nos. 325 and 326.  The merits of those findings and conclusions are currently on appeal to

the Federal Circuit.

In the meantime, however, the Dish defendants moved for an award of attorney's fees

under 35 U.S.C. § 285 in the amount of $5,075,519.  ECF No. 308.  Following briefing, the

Court on January 20, 2022 found that this is an exceptional case and that the Dish defendants as

the prevailing parties are entitled to an award of attorney's fees.  ECF No. 326.  The Court did

not determine a reasonable amount at that time.  Rather, I asked that a responsible partner or

principal lawyer carefully review the defense teams' time entries and cull all time that he or she finds to be duplicative, inefficient, or otherwise unreasonable in view of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974).  I indicted that a responsible member of the plaintiff's legal team should then review the remaining time entries to identify time that plaintiff still considered to be unreasonable or not satisfactorily explained. Then counsel should confer and attempt to reach agreement.  If agreement were not reached, then the parties should set an evidentiary hearing.  I invited plaintiff to divulge information about the time spent by members of the plaintiff's team and their corresponding rates if it was willing to do so.

Adam Shartzer, a principal of the law firm Fish & Richardson that served as lead counsel for the Dish defendants, did the screening and culling requested by the Court.  However, plaintiff's counsel did not object to any of the remaining time entries.  There was discussion of a possible resolution, but nothing came of it.  The Court then conducted an evidentiary hearing on May 19, 2022; and because the hearing was not completed, the Court held a second session of the hearing on August 4, 2022.  The Court then took the matter under advisement pending its review of the evidence and preparation of this order.

## STANDARD OF REVIEW

In determining the reasonableness of attorney's fees, the Court starts with the "lodestar" which is the product of hours "reasonably expended" times a "reasonable hourly rate."  *See Robinson v. City of Edmund,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is presumed to be a reasonable fee.  *Id.*  However, the lodestar can be adjusted after considering factors affecting reasonableness such as the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of

the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19. The Colorado Rules of Professional Conduct provide a similar list of relevant factors.[1]

## ANALYSIS AND CONCLUSIONS

### A. **The Dish Defendants' Initial Application.**

As indicated above, in their motion for an award of attorney's fees the Dish defendants sought an award of $5,075,519, claiming that those were the attorney's fees they reasonably incurred in the six and one-half months after the stay was lifted. ECF No. 308 at 14. This sum included fees billed by Fish & Richardson, L.L.C. ($4,971,532.50) and by Denver counsel Wheeler, Trigg, O'Donnell LLP ($103,986.50). ECF Nos. 308-1 at 1; 308-3 at 1.

In support, the Dish defendants filed the declaration of Mr. Shartzer, describing the members of the Fish & Richardson PC team and the work they performed. The Fish & Richardson contingent included thirteen lawyers; three paralegals; four discovery analysts; four library and search analysts; an IP operations specialist; and a graphic artist. ECF No. 308-1. Their rates ranged upward to $900 per hour. Overall, these individuals had an average billing rate of approximately $668 per hour. That included a 15.5% discount that Dish receives. *Id.* at

---

[1] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, COLORADO COURT RULES – STATE (2018). These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6) nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

11-12.  Defendants also filed the affidavit of Hugh Gottschalk, a partner in Wheeler Trigg O'Donnell LLP, who indicated that his firm's fees totaled $103,986.50.  This represented the work of one partner, one associate and one paralegal, at rates between $685 and $220 per hour, with an overall average billing rate of approximately $637 per hour.  ECF No. 308-3.

In its response Realtime asserted that $5 million is unreasonable on its face.  ECF No. 319 at 14.  However, it declined to dig into the "84 pages of raw billing entries" to highlight those it believed to be unreasonable, and it suggested that the Court should not have to do that either.  *Id.*

### B.  The Dish Defendants' Revised Application: the Lodestar.

After receiving the Court's direction that counsel cull out all duplicative and otherwise inefficient time, Mr. Shartzer reviewed the Fish & Richardson billing records and reduced the total amount from $4,971,532.50 to $4,293,406.93, a reduction of $678,125.57.  *Compare* ECF No. 308-2 with ECF No. 333-1.[2]  The reduction was accomplished by eliminating 1,073 hours, including the hours of fourteen timekeepers.  *See* Ex. 7 at 3-4.  The Dish defendants also withdrew their previous request for an award of prejudgment interest.

The Dish defendants' total request after the culling but with the addition of Fish & Richardson's "fees-on-fees," is $4,564,236.63, comprised as follows:

| | | |
|---|---|---|
| Fish & Richardson pre-attorney's fee application fees: | | $4,293,406.93 |
| Wheeler Trigg O'Donnell fees | | 103,986.50 |
| "Fees-on-Fees" | | 166,843.20 |
|     Hours billed drafting fees motion | 97,065.50 | |
|     Hours billed calculating fees | 69,777.70 | |
| <u>TOTAL</u> | | <u>$4,564,236.63</u> |

---

[2] Defendants have also indicated that they culled $164,942 before submitting their original fee request. *See* ECF No. 335 at 64.

I deem that figure, $4,564,236.63, to be the "lodestar" for purposes of this analysis. It is the product of what defendants submitted as reasonable hours after going through the culling exercises and the rates billed to the Dish defendants by the two law firms.

### C. **Wheeler Trigg O'Donnell Fees.**

While plaintiff objected to the awarding of any attorney's fees, it does not object to the amount of the Wheeler Trigg O'Donnell fees. Therefore, I will include that amount in the fee award without further discussion.

### D. **Fish & Richardson Fees.**

As indicated above, the "lodestar" is presumptively reasonable. *Robinson,* 160 F.3d at 1281. It may be modified after consideration of the *Johnson* factors. However, several *Johnson* factors are presumably reflected in the lodestar amount, so the Court must be careful not to double count factors already considered. *See, e.g., Imperium IP Holdings (Cayman), Ltd,* No. 4:14-CV-00371, 2018 WL 16022460, at *7 (E.D. Tex. April 3, 2018). With that in mind, I look at the *Johnson* factors to determine whether an adjustment from the lodestar is warranted in this case.

1. The time and labor required.

Plaintiff's primary argument is that the Fish & Richardson firm's hours, even after culling, were excessive. However, plaintiff's counsel did not identify any line item in the Fish & Richardson billing records to which plaintiff objects. Indeed, during the second phase of the hearing counsel expressly disavowed any desire to scrutinize or complain about the fee request on a line-item basis. Rather, plaintiff identified large categories of time that it asked the Court to eliminate. I address those categories in turn.

*a. Hours Exceeding Plaintiff's Counsel's Hours.*

Philip X. Wang was plaintiff's lead counsel in this case.  In his declaration Mr. Wang provided a chart showing that plaintiff's legal team recorded 2,094 hours in this case.  ECF No. 331 at 2.  Actually, plaintiff's team recorded 2,430.5 hours, including 1009.5 hours by Mr. Wang alone.  However, he stated that this figure "included substantial work on other Realtime cases (including multiple Federal Circuit appeals, the '610 patent reexam, and other district court cases."  *Id.* at 2, n.4.  Thus, he excluded 336.6 of his own hours from his summary of the hours relevant to the present case, resulting in the 2,094-hour number.  Counsel suggested that if defendants would accept fees determined by multiplying plaintiff's remaining 2,094 hours times Fish & Richardson's average hourly rate of $668 (which was lower than plaintiff's average hours rate), plaintiff would find that to be reasonable.  This would produce attorney's fees for the Fish & Richardson component of defendants' fee request of $1,398,792.

I disagree with this approach.  I invited plaintiff to provide its counsel's hours and rates if it wished to do so, and I appreciate receiving the information.  It puts defendants' fees in a useful context.  However, the fact that plaintiff's team recorded fewer hours does not establish that the Fish & Richardson hours were unreasonable.  Defendants were facing a $42 million claim based on alleged infringement of multiple patent claims.  Although plaintiff perhaps would have narrowed its claims and theories by the time of trial, defendants reasonably had to prepare to defend all the claims and theories.

Realtime has initiated multiple infringement lawsuits through the same law firm.  In my order granting defendants' motion for summary judgment, I noted that two courts had already invalidated similar claims in Realtime's '535 patent as expressing ineligible abstract ideas.

When the plaintiff and its lawyers research and brief similar arguments in multiple cases, one can expect economies of scale. Indeed, the fact that Mr. Wang recorded 336.6 hours to this file that he believes more appropriately should have been recorded to different Realtime cases supports my point. When a law firm is filing multiple infringement cases raising similar claims against a variety of defendants, the hours recorded to individual files and lawsuits do not necessarily reflect the amount of work the case would have required if it were Realtime's only case.

Neither side chose to present independent expert testimony regarding the reasonableness of their respective hours billed. That is fine, but the undisputed fact that the Dish defendants paid all the fees billed, including the amounts culled by Mr. Shartzer, is in a sense independent evidence. After all, defendants are sophisticated technology companies and presumably sophisticated consumers of legal services.

In sum, the comparison to plaintiff's hours is not dispositive in evaluating the reasonableness of defense counsel's hours. It is a factor that I have considered, but I find other factors to be more significant, as I discuss next.

b. *Hours Spent on Excessive Summary Judgment Motions.*

Here, I agree with plaintiff. The Court has practice standards setting the page limits of motions for summary judgment, responses, and replies. Defendants filed multiple motions for summary judgment, each addressing a different theory of relief. The individual motions each met the Court's page limits, but collectively they far exceeded them. As indicated earlier in this order, the Court struck those motions and advised defendants to pick whichever they regarded as their best issue and file a succinct and compliant motion based on that issue. *See* ECF No. 232. They did so. ECF No. 234. That motion was ultimately granted.

Plaintiff contends that the time spent preparing the summary judgment motions that the Court did not consider should be eliminated. Plaintiff indicates that this time accounts for 762 hours. Defendants have not shown that that figure is incorrect. However, they argue that the time should not be excluded because it was time that also contributed to defendants' preparation for trial. I accept that some of the time spent on summary judgment motions was beneficial during trial preparation. However, I have no way to quantify it. The briefing of summary judgment motions and the preparation for trial are two different phases of a case, often done by different members of the team. In any event, I am not inclined to find time spent in derogation of the Court's practice standards to be reasonable. Therefore, while the hours included in the lodestar were presumptively reasonable, I find that the presumption has been rebutted with respect to the hours spent on the stricken motions. Accordingly, I will eliminate 762 hours at Fish & Richardson's average hourly rate of $674.12 for a total of $513,679.44.[3]

   c.   *Fees on Fees.*

Defendants' hours preparing and defending its motion for attorney's fees should be included. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983) (citing *Codex Corp. v. Milgo Electronics Corp.,* 541 F. Supp. 1198, 1201 (D. Mass. 1982) which held that attorney's fees spent on the fee application itself may be awarded under § 285). Defendants had no choice but to incur attorney's fees justifying their application for a fee award in light of plaintiff's opposition. Thus, I will not exclude the $97,065.50 for "hours billed drafting fees motion." However, I will exclude the $69,777.70 allocated to "hours billed calculating fees." This was Mr. Shartzer's and perhaps others' work culling the original fee

---

[3] The average rate of the Fish & Richardson attorneys was initially $668, but it increased slightly to $674.12 as a result of the culling process.

application at the Court's request to eliminate duplication, inefficiency, etc. Essentially, it is work that was done to make the final amount charged to the plaintiff reasonable. Plaintiff should not be required to pay fees for the time expended by defense counsel assuring that the amount billed was reasonable.

    *d. Summary Judgment Delay.*

Plaintiff argues that defendants should have filed their motion for summary judgment based on invalidity shortly after the stay was lifted on January 15, 2021, rather than waiting until June 2, 2021 to file the ultimately successful motion. Plaintiffs suggest that, had defendants done so, much of the time spent in the intervening four and a half months would have been avoided.[4] I do not agree that this time should be discounted.

It is ironic that plaintiff, who from the outset contested defendants' position that the subject claims were invalid, now is claiming that defendants should have filed and won their motion for summary judgment sooner. One might counter than if plaintiff had conceded invalidity, none of the fees that are the subject of this order would have been incurred. Courts grant summary judgment only if there are no material facts that are genuinely disputed. I cannot fault defendants for obtaining discovery and getting their "ducks in a row" before filing their motion.

    2. <u>The novelty and difficulty of the questions</u>. Patent infringement litigation is complex. Attacking the validity of a patent on grounds that it claims an abstract idea is inherently difficult; the line between what is patent-eligible and what is not is not an easy one to draw. On the other hand, as I pointed

---

[4] In support of the delay theory, plaintiff suggest that only the attorney's fees incurred during the first two months after the stay was lifted should be awarded. ECF No. 335 at 17-18. Alternatively, plaintiff argued that all time before May 28, 2021 should be eliminated. *Id.* at 16-17. May 28, 2021 was the date that on which defendants filed the declaration of their expert, Dr. Alan C. Bovik. The Court cited Dr. Bovik's declaration as one factor supporting its order that this was an exceptional case. *See* ECF No. at 326 at 7. Plaintiff posits that the case only became exceptional on that date. However, the Court found that the case was exceptional based upon several factors, only one of which was Dr. Bovik's opinion.

out in my order finding this to be an exceptional case, two courts had already found similar claims in different Realtime patents to be invalid.  *See* ECF No. 326 at 4-5.  That somewhat eased the burden on defendants to show that the subject claims were invalid.  On balance, I find that this factor does not suggest that the Fish & Richardson hours remaining after the exclusions I discussed above should either be increased or further reduced.

3. The skill required.  The lawyers on both sides were highly experienced and skilled in patent infringement and validity litigation.  Fish & Richardson "specializes in intellectual property litigation with broad experience across ever IP forum – from district courts to the PTAB to the ITC – and on appeal to the Federal Circuit and the United States Supreme Court."  Shartzer Affidavit, ECF No. 308-1, at 2.  The Affidavit goes on to describe the backgrounds and experience of the principal lawyers who worked on this case.  *Id.* at 4-10.  Plaintiff has not challenged or questioned the skill or the experience of the Fish & Richardson team.  The case was litigated at a high level by lawyers who specialize in high-stakes patent litigation.  This tends to support a finding that the hours remaining after the culling process and the Court's elimination of two significant categories of time are reasonable.

4. Preclusion of other employment.  The hours supporting the fee application were recorded for the most part between January 15 and July 31, 2021.  *See* ECF No. 308-2.  The number of hours recorded during that six and one-half period suggests that at least several of the lawyers on the team were working essentially fulltime on the case.  However, while their work on this case likely limited the time they could devote to other clients during that period of time, I have no evidence that these lawyers lost clients, or that they were precluded from working for their other clients for more than a few months.  Moreover, Fish & Richardson is a large firm with many other lawyers available to handle its cases.  This is not a factor of importance in this case.

5. The customary fee in the community.  Plaintiff does not dispute Fish & Richardson's rates.  Indeed, their rates, on average, were somewhat lower than the rates of the plaintiff's lawyers.  As for the overall fee, defendants provided excerpts from an economic survey by the American Intellectual Property Law Association concerning billing rates and "typical costs" of patent infringement litigation.  Ex. 2-C.

If I am reading the charts correctly, the median litigation costs in 2020 where more than $25 million was at stake was $2,375,000. *Id.* at 2-C-008. That does not, of course, focus on the Denver community. Then again, the principal lawyers on both sides were not Colorado-based. The only information presented concerning the "customary fee" in the Denver or Colorado communities is Mr. Gottschalk's affidavit on behalf of Denver-based co-counsel Wheeler Trigg O'Donnell LLP. The Wheeler Trigg O'Donnell lawyers came into the case in April 2021, largely to assist in trial preparation and trial, and their hours are far less than those of their Fish & Richardson co-counsel. The average hourly rate for the Wheeler Trigg O'Donnell lawyers was $637, see ECF Nos. 30383 and 308-4. That is roughly comparable to the rates of the Fish & Richardson lawyers.

6. <u>Whether the fee is fixed or contingent</u>. The fee was neither fixed nor contingent. The fees recorded, including the time that Mr. Shartzer culled for present purposes, was all billed on a time basis and were paid by the Dish defendants.

7. <u>Time limitations imposed by the client</u>. I am not aware of any such limits.

8. <u>The amount involved and the results obtained</u>. Plaintiffs were seeking damages in the range of $42 million. While I would not classify this as "bet the company" litigation, the monetary stakes were high and justified a vigorous defense.

9. <u>The experience, reputation and ability of the attorneys</u>. I have discussed that above. The lawyers on both sides were top drawer in the field of patent infringement and validity litigation.

10. <u>The undesirability of the case</u>. From counsel's perspective, this was not an undesirable engagement. On the contrary, it was big-ticket, lucrative litigation of the type that firms like Fish & Richardson are built to handle. This is not a factor suggesting modification of the fee.

11. <u>The nature and relationship of the professional relationship with the client</u>. Fish & Richardson has a relationship with defendants that includes a 15% discount from their regularly hourly rates. That discount was applied to the rates in this case. Defendants appear to be ongoing, repeat clients of the law firm.

12. <u>Awards in similar cases</u>.  Defendants cited four cases in which fee awards were higher than what they seek here.  Ex. 7 at 18.  In *Imperium IP Holdings (Cayman), Ltd,* in which a jury found that defendant infringed a total of seven claims in two patents and awarded nearly $7 million in damages, the court awarded $7,080,695.77 in attorney's fees.  2018 WL 1602460 at *8.  The awards in the other three cases were also substantial.  *See Finjan, Inc. v. Juniper Networks, Inc.,* No. C 17-05659 WHA, 2021 WL 3140716 (N.D. Cal. July 26, 2021) (approximately $5.9 million, including costs); *Kilopass Tech*, *Inc. v. Sidense Corp,* 82 F. Supp. 3d 1154, 1175 (N.D. Cal. 2015) (approximately $5.3 million); and *Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc.,* No. 1:00CV463, 2010 WL 2306677, at * (M.D. N.C. June 8, 2010) (approximately $4.9 million including costs  I also mentioned the economic survey by the American Intellectual Property Law Association above.  The "typical" costs shown in that survey were lower than what is requested here.  However, I cannot tell from that survey what fees were awarded in cases similar to this case.  Suffice it to say that in high stakes patent infringement and invalidity litigation, such as the present case, the attorney's fees are likely to be high.  I believe the experienced lawyers and parties in this case understood that from the outset.

### E.  Conclusion re the Fish & Richardson Fees.

The Fish & Richardson fees in their revised application ($4,293,406.93 plus the hours billed with respect to the fees motion ($97,065.50), minus the fees allocated to the improperly filed motions for summary judgment ($513,679.44 and minus the fees incurred for re-calculating the fees ($69,777.70) nets to a total of $3,807,015.29

### ORDER

The Court finds and concludes that defendants' fees in the total amount of $3,911,002.79, comprised of $3,807,015.29 billed by the Fish & Richardson law firm and $103,987.50 billed by the Wheeler Trigg O'Donnell law firm are reasonable.  The Court orders plaintiff to pay those fees to the defendants.  A Second Amended Final Judgment will issue including those fees.

DATED this 19th day of September, 2022.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge