IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No 17-cv-02097-RBJ

REALTIME ADAPTIVE STREAMING LLC,

      Plaintiff,

v.

SLING TV L.L.C.,
SLING MEDIA, L.L.C.,
ECHOSTAR TECHNOLOGIES L.L.C.,
DISH NETWORK L.L.C

      Defendants.

---

### ORDER ON REMAND REGARDING MOTION FOR ATTORNEY'S FEES

---

This matter is before the Court on remand from the Federal Circuit. After the Court granted summary judgment dismissing plaintiff's remaining claims in July 2021, defendants moved for an award of attorney's fees under 35 U.S.C. § 285. *See* ECF Nos. 305 (order), 306 (final judgment), 308 (motion). Plaintiff objected. ECF No. 317. The Court found that plaintiff disregarded multiple "red flags" that its claim was meritless and pressed on at great expense to defendants. *See* ECF No. 326 at 3. Based on that finding, the Court concluded defendants were entitled to an award of attorney's fees. ECF No. 326 at 8. On appeal, the Federal Circuit determined that all but one of the identified "red flags" should not have been afforded any weight, vacated the fee award, and remanded. *See* ECF No. 386 at 15. After considering the analysis in the remand order and the parties' supplemental briefing, the Court concludes that the single remaining red flag is insufficient to merit an award of attorney's fees under § 285. Defendants' motion at ECF No. 308 is therefore DENIED.

1

# BACKGROUND

### A.  Initial litigation in this case

This case was filed on August 31, 2017.  ECF No. 2.  Initially Realtime claimed that defendants (collectively "DISH") had infringed three patents: U.S. Patent Nos. 8,275.897 ("the '897 patent"); 8,867,610 ("the '610 patent"); and 8,934,535 ("the '535 patent").  Relevant here is the claim that defendants had infringed Claim 1 (and possibly other claims) of U.S. Patent No. 8,867,610 ("the '610 patent").  Entitled "System and Methods for Video and Audio Data Distribution," the '610 patent concerns data compression and decompression algorithms.  It purports to optimize compression time for digital files to prevent problems such as download delay, data buffering, and reduced system speeds.  First it assigns a data profile based on the frequency that the data is accessed or written.  Then it assigns a compression algorithm to each profile, depending upon whether the read to write ratio is balanced (symmetrical) or unbalanced (asymmetrical).

Shortly after the case was filed DISH (and then-co-defendant Arris Group, Inc.) filed motions to dismiss and for judgment on the pleadings.  ECF Nos. 47 and 48.  The motions were based on defendants' contention that the patents were invalid because they were directed to an abstract idea.  *See* ECF No. 47, *passim;* ECF No. 48 at 1.  The Court denied those motions during a Scheduling Conference on March 7, 2018, finding that it would proceed to claim construction first.  ECF No. 80 (transcript) at 14: 14–15.  The Court also expressed its concern about validity:

> [I]f all you're talking about is algorithms and applying some formula, my intuition, my gut instinct would be, well, maybe the defendants have a point. Maybe this is just an abstract concept.  This doesn't sound like something you would patent.  It doesn't sound like it's technology.  It just sounds like an idea.

ECF No. 80 at 9: 6–12.

In late 2018 two other district courts found that Claim 15 of Realtime's '535 patent was invalid as directed to an abstract idea without an "inventive concept" that revived its patentability. *See Realtime Adaptive Streaming LLC v. Google LLC,* No. CV 18-3629-GW(JCx) (C.D. Cal. Oct. 25, 2018) (slip op. filed at ECF No. 234-6) ("*Google*") and *Realtime Adaptive Streaming, LLC v. Netflix, Inc.,* No 17-1692-CFC-SRF, 2018 WL 6521978 (D. Del. Dec. 12, 2018) ("*Netflix*").  Those decisions are relevant here because the two claims—Claim 15 of the '535 patent and Claim 1 of the '610 patent—are closely related.  As the Federal Circuit noted in its remand order, *Google* and *Netflix* concern "a similar patent in the same family with nearly identical claim language" as the claim at issue here.[1] ECF No. 386 at 10; *see also* ECF No. 305 at 6–7 (chart comparing the components of the two claims).  Thus, the reasoning in those two cases bore heavily on the litigation in this case.

## B.  Developments during stay.

This case was stayed on February 26, 2019, pending an *Inter Partes* Review ("IRP") of the '610 patent's validity by the Patent Trial and Appeal Board.  *See* ECF Nos. 157 and 161. While the stay here was in effect, litigation in other fora continued, producing several decisions

---

[1] The '610 patent is titled "System and Methods for Video and Audio Data Distribution." The '535 patent is titled "System and Methods for Video and Audio Data Storage and Distribution."  The only difference between the two is that Claim 1 of the '610 patent includes the phrase "throughput of a communication channel" while Claim 15 of the '535 patent does not. Realtime maintained that the addition of this phrase distinguished the patent here from that in *Google* and *Netflix*.  *See* ECF No. 317 at 8 (maintaining that "Claim 15 of the '535 patent differs from [the '610 patent] by not reciting 'throughput' at all and claiming compression based on a data parameter alone").

In the Claim Construction Order, issued on January 11, 2019, this Court defined "throughput of a communication channel" to mean the "number of pending transmission requests over a communication channel."  *See* ECF No. 151 at 8–10.  And the Court eventually determined that because that phrase was itself an abstract idea, it did not constitute an inventive concept under *Alice*.  *See* ECF No. 305 at 11.

relevant to this case.  First, two administrative patent judges found claims 1–14 of the '535 patent (the claims not addressed in the California court's invalidity order) unpatentable on obviousness grounds.  *See Netflix, Inc. v. Realtime Adaptive Streaming, LLC,* 2020 WL 120083, at \*14 (P.T.A.B. Jan. 10, 2020); *Google LLC v. Realtime Adaptive Streaming, LLC,* 2020 WL 959190, at \*16 (P.T.A.B. Feb. 27, 2020).

Second, the Federal Circuit issued an unpublished decision in *Adaptive Streaming Inc. v. Netflix, Inc.,* 836 F. App'x 900 (Dec. 14, 2020) ("*Adaptive Streaming*").  The case involved a different patent, which claimed systems for communicating audio and video signals between devices that use different formats.  The Federal Circuit affirmed the dismissal of plaintiff's case, finding that the claims at issue failed the first *Alice* step because they "were directed to the abstract idea of 'collecting information and transcoding it into multiple formats.'"  *Id.* at 903.  At the second step, the court determined that the claims did not "incorporate anything that would transform their subject matter into an eligible application of the abstract idea" because there was "no identification in the claims or written description of specific, unconventional encoding, decoding, compression, or broadcasting techniques."  *Id.* at 904.  In short, the Federal Circuit affirmed that this other patent—with some arguable resemblance to the patent at issue here and involving the same parties—was invalid as directed to an abstract idea.

The IPR in this case was terminated on jurisdictional grounds (untimeliness) on January 31, 2020, and rehearing was denied on February 4, 2020.  *See* ECF No. 172.  Appeals were filed, and the Court elected to continue the stay in effect until the conclusion of the IPR proceedings.  *See* ECF No 173.  In a joint status report filed on January 14, 2021, the parties informed the

Court that no IRPs were still pending.  ECF No. 178 at 2.[2]  Accordingly, the Court lifted the stay on January 15, 2021.  *See* ECF No. 179 (minute order).

### C.  <u>Post-stay litigation</u>[3]

The Court held a status conference on January 15, 2021.  At this time, the parties had not yet submitted any filings bringing the decisions in *Google* and *Netflix* to the Court's attention. *See* Fed. Cir. Case No. 23-1035, Oral Arg. at 29:26–31:30 (counsel for defendants acknowledging that at the time of this status conference "we did not tell the judge that there was a *Google* decision adverse to Realtime or that there was a *Netflix* decision adverse to Realtime" and that "for obvious reason, Realtime did not highlight" those decisions to the Court).  At the conference, the Court indicated that it was "prepared to go ahead and reset the trial on the '610 patent," noting the unlikelihood that results of the IPR would be overturned and the minimal need for additional discovery given the extensive litigation that had already taken place.  *See* ECF No. 182 at 5: 12–13, 16–18.  The Court also observed, "I think the chance -- since I've already denied the motion to dismiss, the chances that I'm going to grant a dispositive motion are poor, to say the least, and so I think you should be prepared to try your case and get it done within the next several months."  ECF No. 182 at 5: 18–22.[4]  The Court explained, "You guys

---

[2] An *ex parte* re-examination was still taking place at this time, though the Court determined that this re-examination was "not ground[] for a further postponement" of trial.  ECF No. 182 at 5: 9–11.  Ultimately, on February 4, 2021 and June 9, 2021 a PTO examiner conducting an ex parte reexamination of the '610 patent issued first and second non-final office actions rejecting Claim 1 and several other claims as unpatentable on obviousness grounds.  *See* ECF No. 305 at 4 n.1.

[3] This is the time when the attorney's fees awarded in the initial order began to accrue.

[4] The Court noted the significance of the prior decisions regarding the '535 patent and suggested that plaintiffs were able to assess the import of those determinations.  *See* ECF No. 182 at 14: 12–16 (noting that it did not "know if the '610 patent is valid or not," but that given that "the USPTO found that the nearly identical '535 patent was invalid, then maybe that

have been litigating in one forum or another forever.  That, no doubt, is very good for the bottom line of your respective law firms, but it's time to bring it to an end."  ECF No. 182 at 6: 4–7. The parties and the Court set a trial date and dispositive motion deadline at that conference.  *See* ECF No. 182 at 22: 8–9.

On July 2, 2021 the parties completed briefing on summary judgment.  Defendants argued summary judgment in its favor was warranted because the '610 patent claimed an ineligible abstract idea.[5]  In their briefing, defendants extensively discussed *Google*, *Netflix*, and *Adaptive Streaming* as dictating the invalidity of the '610 patent.  *See*, *e.g.*, ECF No. 234 at 7 (arguing that "[p]recedent dictates that the '610 patent is ineligible" and citing *Adaptive Streaming*, 836 F. App'x 900, among other cases); *see also* ECF No. 234 at 16–19 (arguing that "other courts have determined Realtime's closely related '535 patent fails the *Alice* eligibility test" and citing *Google* and *Netflix*).

On July 16, 2021 the Court held a Trial Preparation Conference for the trial set to begin in August 2021.  At this conference, the Court noted that it had not yet delved into the briefing on the summary judgment motion and asked the parties, before it ruled on the dispositive motion, whether they were "really going to throw the dice or if [they were] going to reach a settlement." ECF No. 303 (transcript) at 4:13–17.  The Court observed that the parties would proceed without settling only if they were "big enough gamblers."  ECF No. 303 at 4:3–6.

---

foreshadows that the '610 will be invalid").  "I have a feeling," the Cout continued, "that [plaintiff's counsel], who is a very sophisticated patent litigator, has a pretty good idea in his mind, regardless of what he would say, as to whether that patent is invalid." ECF No. 182 at 14: 16–19.

[5] The Patent Act does not permit patenting of "laws of nature, natural phenomena, and abstract ideas."  *Alice Corp. Pty. Ltd. v. CLSBank Int'l*, 573 U.S. 208, 216 (2014).

On July 31, 2021 the Court granted defendants' motion for summary judgment on claim eligibility.  In that analysis, the Court followed *Alice*'s two-step process: asking first, whether the claim was directed to an abstract idea; and second, whether the claim nevertheless contained an "inventive concept" sufficient to transform the abstract idea into a patent-eligible application. *See Alice Corp. Pty. Ltd. v. CLSBank Int'l*, 573 U.S. 208, 216 (2014); *see also Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 566 U.S. 66, 77–79 (2012).  At the first step the Court found that the patent was indeed directed to an ineligible abstract concept, and that Realtime's reliance on this Court's definition of the claim term "throughput of a communication channel" to distinguish law on which defendants relied was unpersuasive because that term itself embodied an abstract idea.  ECF No. 305 at 10–11.

At the second step the Court found that there was no "inventive concept" that salvaged the claim, notably because the claim did not specify how the invention would operate to solve the problems the patent claimed to solve, such as an unconventional encoding or decoding structure or other compression, transmission, or storage techniques.  ECF No. 305 at 14.  The decisions in *Google* and *Netflix* "featured prominently" in the reasoning for this order.  *See* ECF No. 326 at 5 (order on attorney's fees characterizing the summary judgment order).  On appeal, the grant of summary judgment for invalidity was affirmed on the merits. *See* ECF No. 384.

**D. Litigation of attorney's fees.**

After the grant of summary judgment, defendants moved for attorney's fees under 35 U.S.C. § 285.  ECF No. 308.  They argued that "Realtime's unreasonable litigation strategy, coupled with its exceptionally weak merits positions, ma[d]e this case exceptional."  ECF No. 308 at 5.  Because Realtime's claims "became untenable before Realtime requested the stay be lifted," defendants argued, Realtime should be required to bear the costs of the "needlessly

prolonged" proceedings for the duration of post-stay litigation.  ECF No. 308 at 5.  Plaintiff opposed this motion, maintaining that its claims were not "exceptionally meritless."  ECF No. 319 at 1.  Specifically, plaintiff cited the denial of defendants' motion to dismiss for ineligibility and the Court's agreement with plaintiff's construction of several disputed terms in the '610 patent as evidence that its position was reasonable.  *See* ECF No. 319 at 1.

The Court found that defendants were entitled to a fee award under § 285.  Considering the totality of circumstances, the Court reasoned that Realtime "disregarded repeated indicators that the '610 patent was likely invalid and pressed on at great expense to the defendants (and itself)."  ECF No. 326 at 10.  The Court relied on an amalgamation of several "red flags" that suggested that Realtime's continuation of the litigation was unreasonable: (1) that in *Google* and *Netflix*, claims 1–14 of the '535 patent were found "unpatentable on obviousness grounds;" (2) that in *Adaptive Streaming*, the Federal Circuit "affirmed the dismissal of plaintiff's case," finding that the claims at issue were directed to an abstract idea; (3) that defendants reiterated to Realtime in a letter the significant indicators that the claim was invalid, "noted that substantial litigation expense would be incurred if the case continued, and asked plaintiff to dismiss its claims"; (4) that "a PTO examiner conducting an *ex parte* reexamination of the '610 patent issued first and second non-final office actions rejecting Claim 1 and several other claims as unpatentable on obviousness grounds"; and (5) that "as an exhibit to a motion for summary judgment, defendants filed a declaration of Dr. Alan C. Bovik" suggesting that the claim was patent ineligible.  ECF No. 326 at 6–7.  The Court concluded that "Realtime's dogged pursuit of the case notwithstanding these danger signals render[ed] this an exceptional case;" and that

therefore, defendants were "entitled to an award of reasonable attorney's fees."  ECF No. 326 at 8.[6]

On appeal, the Federal Circuit determined that "[s]ome of these red flags should not have been accorded any weight" and consequently vacated the fee award and remanded.  ECF No. 386.  In that decision, the Federal Circuit acknowledged that this Court "did not err in its determination that the *Google* and *Netflix* decisions on Claim 15 of the '535 patent were a significant red flag."  ECF No. 386 at 8–9.  Those cases, the court explained, were "about a similar patent in the same family" as the one in the instant case and had "nearly identical claim language."  ECF No. 386 at 10.  Therefore, their dismissal could suggest that Realtime's continuation of the litigation here was unreasonable.

But the court appeared to hold that it was impermissible to give any weight to the additional factors identified in the fee order[7]—the Federal Circuit's decision in *Adaptive Streaming*, the Board's invalidation of the '535 patent, the reexamination and invalidation of the '610 patent for obviousness, DISH's notice letter to Realtime, and Dr. Bovik's analysis.  *See* ECF No. 386 at 10–15.  It explained that *Adaptive Streaming* "should not have been treated as a red flag" because it was about "a different technology entirely" than the '610 patent at issue here.

---

[6] In a separate order the Court concluded that the amount of reasonable attorney's fees totaled $3,911,002.79.  ECF No. 342 at 13.  That calculation was not challenged on appeal and the Court does not revisit it here.

[7] Although the required analysis under § 285 considers the totality of the circumstances, *see Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020), the reviewing court here seemed to consider each "red flag" in isolation to determine whether that factor alone could have justified a fee award.  *See, e.g.*, ECF No. 386 at 14–15 (holding that that the opinion of DISH's expert, Dr. Bovik, was "insufficient on its own to support a finding of exceptionality" and therefore should not have been considered).  This Court abides by the opinion of the reviewing court while noting possible tension between its reasoning and the applicable caselaw.

ECF No. 386 at 10.[8]  Regarding the PTAB's invalidation of the '535 patent, the court concluded

that there was "not enough in the Board decisions—which . . . did not analyze whether anything

in the prior art was well-understood, routine, or conventional—to put Realtime on notice that its

arguments regarding the eligibility of its patent claims were entirely without merit."  ECF No.

386 at 11.  Therefore, the court held that these two factors could not properly support an award

of attorney's fees under § 285.

Next considering the finding of invalidity on reexamination of the '610 patent, the court

noted that it was unclear whether the district court placed any weight on this factor.  ECF No.

386 at 11 (quoting ECF No. 326 at 10 (noting that the results of the reexamination "could have

served as additional red flags regarding the viability of Realtime's case")).  "To the extent that

the district court did rely on the office actions as red flags," the court concluded, the identified

decisions did not "support a finding of exceptionality," because they applied a different standard

than the one governing validity and because they ultimately "*rejected* the district court's

construction of 'throughput' in favor of a broader construction."  *See* ECF No. 386 at 12 (citing

J.A. 2888–2901) (emphasis in original).

Regarding DISH's notice letter to Realtime, the court concluded this factor was "not

sufficient to support an exceptionality finding in this case" because it "contain[ed] no analysis

sufficient to put the patentee on notice that its arguments regarding ineligibility [we]re so

meritless as to amount to an exceptional case."  ECF No. 386 at 13.  The court emphasized that

although the letter did "highlight[] the *Google* and *Netflix* decisions," it was "riddled with

conclusory statements asserting that "the claims of the '610 patent were similar to those of the

---

[8] Unlike *Google* and *Netflix*, which concern technology for digital data compression,
*Adaptive Streaming* concerns technology for receiving a video signal in one format and
broadcasting the signal to other devices in a different format. *See* ECF No. 386 at 9.

'535 patent and to the claims of the *Adaptive Streaming* patent," without "further analysis" or "specific comparisons." ECF No. 386 at 13. This letter, the court held, was insufficient—"viewed independently of the *Google* and *Netflix* decisions it referenced"—to "trigger § 285." ECF No. 386 at 12–13.

Finally, the court held that the opinion of DISH's expert, Dr. Bovik, that the patent was ineligible was "insufficient on its own to support a finding of exceptionality." ECF No. 386 at 14–15. Although "the district court was free to rely on Dr. Bovik's opinions in ruling on the subject matter eligibility motion," the Federal Circuit concluded the Court did not adequately explain its conclusion that the plaintiffs had failed to give "serious consideration" to those opinions. ECF No. 386 at 15. In addition, the Federal Circuit rejected DISH's argument that the opinions "crystallized many of the glaring deficiencies with Realtime's eligibility arguments" and would have led a reasonable plaintiff to voluntarily dismiss. *See* ECF No. 386 at 15. The Court concluded that "the district court erred in its justification of Dr. Bovik's opinions as a red flag." ECF No. 386 at 15.

This Court interprets the Federal Circuit's opinion to mean that the only "red flag" properly considered here is the courts' finding in *Google* and *Netflix* that the claims of the '535 patent were ineligible. The parties appear to agree with this understanding. *See* ECF No. 391 at 2 (supplemental brief by DISH) ("The Federal Circuit confirmed on appeal that the *Google / Netflix* decisions were a legitimate red flag . . . despite disagreeing with the Court's other red flags."); *see also* ECF No. 392 (supplemental brief by Realtime) ("The Federal Circuit held that five of the six red flags should not have been given any weight.").

Considering only this factor, the Court concludes that defendants' have not carried their burden of establishing that this case is exceptional within the meaning of § 285 such that an award of attorney's fees is warranted.

## LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "An exceptional case 'is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *University of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V.,* 851 F.3d 1317, 1322 (Fed. Cir. 2017). There is no precise formula for making that determination. *Biax Corp. v. Nvidia Corp.,* 626 F. App'x 968, 970–71 (Fed. Cir. Feb. 24, 2015) (unpublished). The determination is left to the district court "in the case-by-case exercise of their discretion,[9] considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The movant has the burden of demonstrating exceptionality by a preponderance of the evidence. *Id.* at 557.

---

[9] District courts enjoy broad discretion to decide whether a case is exceptional under § 285. *See Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1246 (10th Cir. 2021) (noting that "the Supreme Court provided only limited direction to guide the discretion of district courts" in this area). Even when a court deems a case exceptional, it has discretion to decide whether the case is sufficiently exceptional to warrant a fee award. *See Nat'l Ass'n of Pro. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000) ("[E]ven in exceptional cases, the award of attorney fees is vested in the discretion of the district court."). District courts are "particularly well-equipped" to decide whether a case is exceptional and whether an award of fees is appropriate because they "live[] with the case over a prolonged period of time." *Derma Pen*, 999 F.3d at 1244.

"The legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice,' not to punish a party for losing." *Munchkin*, 960 F.3d at 1378 (quoting *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)). Accordingly, a "case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award," but it is "the rare case" in which a party's non-sanctionable litigation conduct, even if unreasonable, is "so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.

Even "aggressive litigation tactics and overreach do not necessarily transform an ordinary case into an exceptional one for which fee-shifting is warranted." *Alfwear, Inc. v. Mast-Jaegermeister US, Inc.*, No. 22-4020, 2023 WL 8232072, at *2–3 (10th Cir. Nov. 28, 2023) (unpublished) (citing *Octane Fitness*, 572 U.S. at 554); *see also OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th 1285, 1293 (Fed. Cir. 2023) (affirming district court's determination and quoting its reasoning—that although "[i]ndustry competitors zealously advocating their positions often results in resource- and time-intensive litigation[,] . . . that alone is insufficient to make a case 'exceptional,' and the prevailing competitor is not entitled to fees simply because it won the hard-fought case").

District courts may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (concerning whether to award fees under a similar provision in the Copyright Act)). For example, the Tenth Circuit has suggested that a case is exceptional within the meaning of this statute if "the plaintiff's suit . . . lack[s] any reasonable foundation," *Nat'l*

*Ass'n of Pro. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000), or if it is prosecuted in an "'unusually vexatious and oppressive manner.'"  *Derma Pen*, 999 F.3d at 1245 (quoting *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 592 (10th Cir. 2007)).

## ANALYSIS

The question here is not whether Realtime's claims were ultimately meritless; the question is whether its claims were so "exceptionally meritless" or its continuation of the litigation so unreasonable that to require defendants to bear their own attorney's fees would constitute a gross injustice.  *Octane Fitness*, 572 U.S. at 555; *see also Munchkin*, 960 F.3d at 1378.  In accordance with the remand order and the parties' positions in their supplemental briefing, the Court asks whether the decisions in *Google* and *Netflix*— finding Claim 15 of the '535 patent invalid—standing alone could merit a fee award under § 285.  In other words, the question here is whether *Google* and *Netflix* so completely predestined the invalidity of the '610 patent that Realtime's claim "lack[ed] any reasonable foundation."  *See Pro. Baseball Leagues*, 223 F.3d at 1147.

I discuss in turn several factors that bear on whether Realtime reasonably believed its remaining claim was colorable notwithstanding adverse decisions in *Google* and *Netflix*: (1) statements by the Court suggesting that it viewed the suit as non-frivolous; (2) conduct by the defendant indicating it may not have perceived the adverse decisions to be dispositive here; and (3) the content and precedential value of the *Google* and *Netflix* decisions.  I conclude that those two decisions—though inauspicious for the plaintiff—did not render Realtime's post-stay litigation so frivolous, unreasonable, or oppressive as to warrant fee-shifting under § 285.

14

A.  <u>**Implied license by the Court.**</u>

DISH argues that the decisions in *Google* and *Netflix*, issued in 2018, should have constituted such a "significant red flag to Realtime to reconsider its patent eligibility position" that attorney's fees are warranted.  ECF No. 391 at 5.  Realtime maintains that those decisions alone cannot justify a fee award because it "believed in its case, made credible arguments, and relied on the Court's contemporaneous rulings" in continuing to pursue litigation after the stay was lifted.  ECF No. 392 at 5.  Specifically, Realtime highlights several rulings and "comments" by the Court that it characterizes as "*objectively* and *subjectively* reinforc[ing] Realtime's good faith belief in its case."  ECF No. 392 at 4 (emphasis in original).

First, Realtime cites the denial of defendants' motion to dismiss as an "indication that the '610 patent claims were eligible."  ECF No. 392 at 4.  Realtime asserts that when denying the motion to dismiss, the Court indicated it was "'satisfied with the other merits' of the *Actian/Carbonite* decisions upholding the eligibility of similar patents."  ECF No. 392 at 3 (citing ECF No. 386 at 3).[10]  This argument is misleading.  Realtime appears to imply that the court in *Actian* had ruled on eligibility, and that this Court indicated it agreed with that eligibility ruling substantively.  That is not the case.

Rather, as Realtime acknowledged at the hearing on the motion to dismiss, the district court in the *Actian* cases "denied the motion to dismiss without prejudice," explaining that it would "await claim construction, and then [would] decided whether to dismiss or not to dismiss."  ECF No. 80 at 13:1–4.  Ultimately, Realtime conceded, the patent eligibility issue in that case "basically became dead" because the parties "never raised a Section 101 issue again"

---

[10] Realtime's citation to ECF No. 386 appears to be mistaken.  The quoted language appears in ECF No. 80 at 14:13–15 (transcript of scheduling conference).  ECF No. 386, the Federal Circuit's remand order, does not include the quoted language.

and instead proceeded to trial.  *See* ECF No. 80 at 13:6–13.  After hearing the parties' arguments,

the Court noted it was "satisfied with the merits of [the district court's] view [in *Actian*], *and that

is we need to get these terms defined and then see where we are*."  ECF No. 80 at 14:13–15

(emphasis added).  The Court thus denied the motion to dismiss pending claim construction, not

based on the substantive arguments regarding eligibility.  Realtime's suggestion that the denial of

the motion to dismiss could have been understood as a ruling "indicat[ing] that the '610 patent

claims were eligible," ECF No. 392 at 4, is unpersuasive.

      Second, Realtime argues that "the Court's comments in Jan[uary] 2021. . . reinforced

Realtime's good faith belief in its case" and gave it a "green light" to continue litigation.  ECF

No. 392 at 4.  Recall, at the January 2021 conference after the stay was lifted, the court stated

that it was "prepared to go ahead and reset the trial on the '610 patent."  *See* ECF No. 182 at 5:

12–13.  The Court also observed, "I think the chance -- since I've already denied the motion to

dismiss, the chances that I'm going to grant a dispositive motion are poor, to say the least, and so

I think you should be prepared to try your case and get it done within the next several months."

ECF No. 182 at 5: 18–22.  Realtime maintains that this statement provides "strong evidence" that

Realtime's eligibility position was not objectively baseless.  *See* ECF No. 392 at 4 (citing

*OneSubsea*, 68 F.4th at 1296 ("When a district court, fully aware of the competing contentions of

the parties, declines to end the case on summary judgment and allows a plaintiff's case to

proceed, the district court may have effectively determined that the position of the party

opposing summary judgment is not objectively baseless . . ..")).

      In isolation, this statement could appear to indicate that the Court saw some merit in

Realtime's position on eligibility.  But in context, Realtime's reliance on this statement as an

endorsement by the Court to continue litigation was not reasonable.  *Cf*. ECF No. 392 at 4

(arguing that Realtime "should not be penalized for litigating a claim it was granted permission to pursue") (internal quotations omitted).  Realtime maintains that "it cannot be disputed that in Jan[uary] 2021, the Court was aware of the parties' competing positions on eligibility."  ECF No. 392 at 4.  Therefore, it argues, like in *OneSea*, fees under § 285 would be inappropriate because the district court "effectively determined" that the plaintiff's position was "not objectively baseless" by refusing to grant summary judgment.  *See* 68 F.4th at 1296; *see also* ECF No. 392 at 4 (citing the same portion of *OneSea*).

But at that time, the parties had not yet notified the Court of the decisions in *Google* and *Netflix*, which ultimately became dispositive of the eligibility issue.  *See* Oral Arg. at 29:26–31:30 (counsel for defendants acknowledging that at the time of this status conference "we did not tell the judge that there was a *Google* decision adverse to Realtime or that there was a *Netflix* decision adverse to Realtime" and that "for obvious reason, Realtime likewise did not highlight" those decisions to the Court).  So here, unlike in *OneSea*, the district court was not "fully aware of the competing contentions of the parties" when it suggested it was unlikely to grant summary judgment.  To the contrary, it was unaware of relevant precedent that became central to the defendants' argument for summary judgment.  Realtime's argument that this comment by the Court provided "strong evidence" of the merit of their claim notwithstanding *Google* and *Netflix*—when the Court did not know of the existence of those cases—is simply illogical.

Although the Court is unpersuaded by Realtime's purported reliance on its comments at the January 2021 conference, it is possible that this reliance argument could have some merit as to comments the Court made at the July 2021 Trial Preparation Conference.  There, the Court noted that it had not yet decided the motion for summary judgment motion and asked the parties, before it invested the time to do so, whether they were "really going to throw the dice or if [they

were] going to reach a settlement." ECF No. 303 (transcript) at 4:13–17. The Court also observed that the parties would proceed without settling only if they were "big enough gamblers." ECF No. 303 at 4:3–6.[11] These statements could be interpreted as implying that the parties' positions were at least colorable, such that their resolution was uncertain.

At this point, the defendants *had* filed a notice of intent to file for summary judgment that mentioned and briefly described the decisions in *Google* and *Netflix*. *See* ECF No. 204 at 3 (filed in May 2021, noting that "other tribunals have found claims of the related '535 patent ineligible" and describing both cases). Although the Court noted it had not yet reviewed the briefing on summary judgment in detail—perhaps giving a reasonable litigant some pause regarding any implied concomitant merits assessment—a reasonable litigant could assume the Court had reviewed the defendants' notice of intent to file for summary judgment and therefore was aware of the decisions in *Google* and *Netflix* in July 2021. Thus, it is possible that this statement could have indicated to Realtime, at least as of July 2021, that the Court found colorable its position on eligibility.

In short, the Court is largely unpersuaded by Realtime's arguments that the denial of the motion to dismiss and the comments at the January 2021 conference gave plaintiff a "green light" to continue with litigation. However, the Court acknowledges that its later comments, at least as of July 2021, could have suggested that it believed plaintiff had a chance of surviving summary judgment and prevailing at trial despite the adverse decisions in *Google* and *Netflix*.

---

[11] Realtime did not highlight this comment in its briefing on attorney's fees. However, the Court understands the comment as a possible indication to Realtime that the Court viewed its litigation position as colorable. Unlike the other examples Realtime argues permitted such an inference, this exchange took place after defendants filed notice of the decisions in *Google* and *Netflix*. Because this is an example of an argument that Realtime adequately raised in its briefing on this motion, the Court considers it.

B. **Defendants' treatment of *Google* and *Netflix*.**

Realtime also argues that defendants' own conduct suggests that limited import should be assigned to the decisions in *Google* and *Netflix*.  *See* ECF No. 392 at 4 (arguing that "any notion that *Google/Netflix* should have immediately prompted Realtime to dismiss its case is belied by DISH's own conduct").  First, Realtime notes, "DISH didn't raise *Google/Netflix* with the Court, or seek resolution of the eligibility issue, for 2.5 years after the claim construction order (and five months after the stay was lifted).  ECF No. 392 at 4–5.  And second, Realtime argues, "when DISH ultimately moved for [summary judgment], it didn't substantively discuss *Google/Netflix* until page 16 of 19 of its briefing.  ECF No. 392 at 5 (citing ECF No. 234).  In short, Realtime argues that it was not unreasonable for Realtime to proceed after *Google* and *Netflix* issued, when even defendants did not "treat[] [those decisions] as a game changer that was case dispositive."  ECF No. 392 at 5.

The Court does not find this argument persuasive.  To be sure, evidence of defendants' interpretations of *Google* and *Netflix* may be relevant to the reasonableness of plaintiff's litigation position.  But defendants' failure to notify the Court of *Google* and *Netflix* until five months after the stay was lifted does not persuasively suggest that defendants viewed those cases as unimportant.  Instead, defendants seem to have brought those cases to the Court's attention at an appropriate time, when seeking leave to file for summary judgment.  *See* ECF No. 204 at 3 (letter of intent to file for summary judgment, filed in May 2021) (arguing that '610 was ineligible and highlighting that "[t]wo other tribunals have found claims of the related and highly similar '535 patent . . . to be patent ineligible under § 101").

Similarly, the Court declines Realtime's request to extrapolate from the placement of the discussion of *Google* and *Netflix* in defendant's summary judgment motion that defendants did

not believe the two cases were significant.  At summary judgment, defendants emphasized both

the Federal Circuit's decision in *Adaptive Streaming* and the district courts' decisions in *Google*

and *Netflix*.  The fact that defendants structured their letter of intent and summary judgment

motion as making affirmative arguments under *Alice*'s two steps and *then* discussing relevant

precedent cannot properly be understood as an admission that they considered the latter

unimportant.  However, the Court notes that this structural decision in defendants' briefing

reflects the reality—discussed in the following section—that *Google* and *Netflix* were merely

*relevant* precedent, not *binding* precedent or even perfectly analogous precedent.

### C.  <u>Characteristics of the decisions in *Google* and *Netflix*.</u>

Finally, the Court considers whether the content and precedential value of *Google* and

*Netflix* would have indicated to a reasonable plaintiff that its claims "lack[ed] any reasonable

foundation."  *See Pro. Baseball Leagues*, 223 F.3d at 1147.[12]  In *Netflix*, 2018 WL 6521978, a

magistrate judge in the District of Delaware recommended that claim 15 of the '535 patent was

"directed to the abstract idea of encoding and decoding data, and the digital compression of data"

under *Alice* step one and did not "contain[] an inventive concept" under *Alice* step two.  *Id.* at

*5–6.  The recommendation rejected as conclusory Realtime's argument that "the '535 patent

marked an improvement in computer functionality because it 'overcame limitations and issues

relating to a compromise between efficient data storage, access speed, and addressable data

space.'"  *Id.* at *6 (quoting Realtime's briefing, D.I. 14 at 10).  In addition, the recommendation

analogized to "similar claims" concerning computers "evaluating and selecting" or collecting

---

[12] The two previous sections concerned the Court's and defendants' apparent assessments of the import of *Google* and *Netflix* and the extent to which Realtime may have reasonably relied on their conduct.  This section considers whether the two decisions objectively foreclosed any reasonable belief that the '610 patent was eligible.

and recognizing data, which had been found patent ineligible.  *See id*. at *6 (citing *SmartGene,
Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014) and *Content
Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir.
2014)).

In *Google*, Case No. 2:18-cv-03629-GW-JC, ECF No. 36, a district court in the Central
District of California reached the same conclusion that claim 15 of the '535 patent was ineligible,
with slightly different reasoning.  The court concluded at step one that claim 15 was "directed to
the abstract idea of making a choice between compressors based on a data parameter," because
the claim was "not tethered to a technological improvement."  *Id*. at 12.  Specifically, the court
noted "there was not a suggestion from the claim language" that the method would "result in a
faster rate of compression."  *Id*.  The court also observed that the claim was "broad enough to
cover circumstances where an asymmetric compressor is (manually) selected," which was
unrelated to computer functioning.  *Id*.  At step two, the court concluded there was no additional
inventive concept other than the "use of the ineligible concept to which [the claim] [was]
directed."  *Id*. at 13.

This Court concluded in its initial fee order that "the[se] two cases should have featured
prominently in Realtime's thinking about the present case."  ECF No. 326 at 5.  The Federal
Circuit agreed.  Although *Google* and *Netflix* concerned a different patent than the one at issue
here—Claim 15 of the '535 patent rather than Claim 1 of the '610 patent—they "were about a
similar patent in the same family with nearly identical claim language."  ECF No. 386 at 10.
Therefore, on appeal the Federal Circuit concluded that this Court "did not err in its
determination that the *Google* and *Netflix* decisions . . . were a significant red flag to Realtime to
reconsider its patent eligibility position of the asserted claims of the '610 patent."  ECF No. 386

at 8–9.  The Court continues to believe that these decisions should have given Realtime

significant pause regarding the merit of their position on the '610 patent.

However, though the two cases strongly suggested the ineligibility of Claim 1 of the '610

patent, their existence did not so predetermine that outcome that subsequent litigation was

exceptionally meritless or grossly unjust.  The two cases—one, a report and recommendation by

a magistrate judge, and the other an unpublished decision by a district court in another circuit—

may be (and were) persuasive to this Court, but they were not binding on its decision.

In addition, though the two decisions reached the same result, they did so with slightly

different reasoning.  For example, while the court in *Google* found that the claimed method did

not improve computer functioning in part because it could be performed manually, the

recommendation in *Netflix* found that the claimed method did not improve computer functioning

because it did not explain how it would "overcome limitations and issues relating to a

compromise between efficient data storage, access speed, and addressable data space."  *Compare*

18-cv-03629-GW-JC, ECF No. 36 at 12–13 *with* 2018 WL 6521978, at *6.  The absence of a

univocal analysis of the '535 patent in these two cases might tend to suggest that another court

could view the arguments still differently.

Even if this Court found compelling the reasoning in *Google* and *Netflix*, Realtime argued

here to distinguish those cases.  Realtime maintained, for example, that the language of the '535

patent was distinguishable from that of the '610 patent, because the latter included the term

"throughput of a communication channel" while the former did not.  *See* ECF No. 326 at 5

(describing plaintiff's argument).  Though this Court ultimately found this distinction did not

constitute a meaningful difference, because that "term is itself an abstract idea," Realtime's

argument provided at least a colorable basis to distinguish the claim here from those in *Google*

and *Netflix*.  It is not appropriate to use § 285 to punish Realtime for failing to persuade the Court

of this distinction.  *See Munchkin*, 960 F.3d at 1378 (quoting *Checkpoint*, 858 F.3d at 1376)

("The legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice,' not

to punish a party for losing.").

The facts that the existing adverse precedent was not binding on this Court and that

plaintiff raised colorable arguments against applying them here distinguish this scenario from

that in *Inventor Holdings*.  *Cf*. ECF No. 391 at 3 (arguing that *Inventor Holdings* justifies a fee

award here based only on the plaintiff's "weak patent eligibility position").  But *Inventor*

*Holdings* did not permit a fee award based only on a party's weak merits argument; it permitted a

fee award based on an "obvious[ly]" or "manifest[ly]" groundless merits argument.  *See* 876

F.3d at 1380 (affirming a fee award under § 285 because "[t]here were *obvious* issues with the

[contested] patent's claims that [plaintiff] should have recognized post-*Alice*," namely, that the

claimed method was "*manifestly* directed to abstract idea").  876 F.3d at 1380 (emphasis added).

Here, the recommendation in *Netflix* and the unpublished decision in *Google* did not indicate that

their findings regarding the '535 patent were obvious or manifest; nor did they suggest that

application of their decisions by a district court in another circuit as to another patent was

certain.

## ORDER

The Court concludes that although plaintiff had reason to believe its claims were weak,

the existence of the *Google* and *Netflix* decisions cannot, standing alone, establish by a

preponderance that plaintiff's claims were exceptionally meritless or that requiring the parties to

bear their own fees would constitute a gross injustice.  On remand, defendants' motion for

attorney's fees, ECF No. 308, is DENIED.

DATED this 5th day of February, 2025.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge